SHEPARD, Chief Justice,
dissenting.
The novel question presented in this case could be resolved either way. Judicial policy could either recognize or decline to recognize civil settlement agreements when deciding whether to impose restitution in a criminal case. I think the choice made today will turn out to be problematic for just about everyone concerned.
For example, an injured plaintiff who receives an offer of civil settlement with standard release language will have no way of knowing whether further compensation might be achieved through eriminal restitution notwithstanding the release. The facts in this case are that the offer was the other driver's insurance policy limits, but whenever the damages are plausi *974 bly less than the available amount of insurance, the claimant will face an unattractive choice. Should she settle now for less than the limits and hope for more from the criminal disposition? Will the other driver be found guilty-or not guilty, in which case there will be no criminal penalty imposed at all?
More pertinent to the interests of claimants will be the impact of today's decision on how easy it is for them to obtain settlement offers from defendants and their insurance carriers. How can a carrier manage an effective settlement for its insured if the release obtained will not protect it or its insured from additional claims? Because the carrier has a duty of good faith with its insured, any settlement for less than the policy limits will subject the carrier to a later contention by the insured that the settlement wrongly left the policyholder to additional damages imposed by the restitution system.
If the wrongdoer is a person with assets, it would be even more difficult to imagine a prompt settlement. An insured wrongdoer would find that the only route to closure would be a civil trial on the merits. The delay required for this outcome would have an adverse impact all the way around. The wrongdoer would likely face sentencing before the criminal court without having agreed to an amount of compensation, and the injured party would have to wait longer to be compensated.
The Court does say that a criminal defendant ordered to pay restitution may reclaim it by suing the injured party for breach of the settlement agreement. Slip op. at 5. Thus, the victim's additional compensation through the restitution system is a short-lived one. And one that, because of the cost of legal representation, could also work quite adversely to both the injured party and the wrongdoer. The restitution claim here was filed by the victim's private attorney, who was presumably still at work under the terms of an ordinary contingent fee arrangement seeking to find additional compensation for the client. If so, the victim would receive only a share of the $27,000 paid by the defendant through the criminal restitution system.
The defendant would then hire counsel to pursue return of the $27,000, and he would understandably owe his attorney a fee for representing him in that litigation. Even if he obtains a judgment for the full amount, he is thus not made whole.
He has company. The victim will owe $27,000 (more than she received in the first place) and presumably need to hire counsel to defend her in the wrongdoer's recovery action.
Finally, I agree completely with the majority that restitution serves two purposes: rehabilitation of the offender and compensation of the victim. Slip op. at 4. But, the rule it adopts will pose serious questions about who should receive the restitution. In a case where the actual damages were $80,000, and the carrier paid $80,000, and the criminal court ordered restitution of $27,000, it would be the insurance carrier who should receive the restitution.
Those are not the facts before us, but the present facts pose yet another question. Here, the trial judge did not find that the actual damages suffered by the victim exceeded $100,000. The trial judge's sentencing statement, slip op. at 4 n. 2, seems to say that the court chose to order $27,000 in restitution based on the idea that the victim could have waited until the criminal case was disposed of and received a restitution order of $100,000 without hiring counsel. The victim should not be in a worse position for having settled earlier, goes the theory, and thus should receive enough restitution to make up for the contingent fee presumably owed to her lawyer on the $100,000. To the extent this constitutes a finding that the actual value *975 of the damage was $100,000, it poses yet another difficult legal issue concerning who should receive the $27,000.
At the end of the day, I think the Court's solution to this case prompts much running in place that will do little to serve any of the participants. Their lives, and ours, would be more fulsome if the Court simply decided that this was a moment when the judiciary should abide by the financial decisions of the victim and the tortfeasor. Because the Court has taken a different path, vietims, tortfeasors, and insurance premium payers will all be worse off.
For these reasons, I would reverse.